UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

MICHAEL W. McFANN  CIVIL ACTION NO. 06-0910

versus  JUDGE HICKS

JO ANNE B. BARNHART,  MAGISTRATE JUDGE HORNSBY
COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION

**REPORT AND RECOMMENDATION**

**Introduction**

Michael McFann ("Plaintiff") applied for disability benefits based on a number of physical problems. Plaintiff's education level is not clear, and his past work experience includes employment as a machine operator at a battery plant, a bellman, an airplane cargo loader, and other jobs. He was 41 years old when ALJ Charles Lindsay denied his claim. The Appeals Council denied a request for review, and Plaintiff filed this civil action seeking the limited judicial relief that is permitted by 42 U.S.C. § 405(g).

**Summary of the ALJ's Decision**

The ALJ analyzed the claim pursuant to the five-step sequential analysis set forth in 20 C.F.R. § 404.1520 (governing claims for disability insurance benefits) and § 416.920 (parallel regulations governing claims for Supplemental Security Income) and described in Barnhart v. Thomas, 124 S.Ct. 376, 379-80 (2003). He found that Plaintiff was not engaged in substantial gainful activity (Step 1) and suffered from bilateral carpal tunnel syndrome,

status post-carpal tunnel release on the right and right ulnar nerve transposition; reflex sympathetic dystrophy; osteoarthritis; and depression, impairments that are severe within the meaning of the regulations (Step 2) but not severe enough to meet or equal a listed impairment (Step 3) that would require a finding of disabled without regard to the applicant's age, education or vocational factors.

The ALJ conducted a thorough review of the medical evidence, assessed Plaintiff's credibility, and determined that Plaintiff retained the residual functional capacity ("RFC") to perform the demands of light work, reduced by the need for a sit/stand option; an inability to perform overhead work with either upper extremity; the need to avoid constant, repetitive motions of the hands and wrists; a moderately limited ability to deal with detailed instructions, but an unlimited ability to deal with simple job instructions; and a moderately limited ability to interact with the general public, maintain attention and concentration, and set realistic goals independently of others.

The ALJ determined that Plaintiff's RFC did not permit him to perform the demands of his past relevant work (Step 4), so the burden shifted to the agency to show that there were other jobs existing in significant numbers that Plaintiff could perform consistent with his RFC, age, education and work experience. A vocational expert testified with respect to that Step-5 issue. She identified several jobs, such as bench assembler, inspector-packer, and ampoule sealer, that Plaintiff could perform. Based on that evidence, the ALJ found that Plaintiff was not disabled.

**Issues on Appeal**

Plaintiff has identified three issues. He asserts that the Commissioner erred by:

(1) Not properly considering his complaints of pain,

(2) Not including left knee complaints as a severe impairment, and

(3) Not considering the impact of medication side effects and splints that Plaintiff wears on his arms.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Issue 1: Pain**

Plaintiff had surgery in 2000 after he experienced severe pain in his right wrist and hand related to repetitive work. He had additional surgery in 2001, and he received physical therapy. Notes from February 2002 observed that Plaintiff "makes no facial grimace when he moves his wrists but still [complains of] severe pain in the wrist with activity." The therapist observed that Plaintiff's "subjective comments on rating his pain are inconsistent

with clinical observation." Tr. 155. In April 2002, Plaintiff continued to complain of pain in his hand/wrist that did not appear to be responding to treatment, so he was discontinued from therapy. Tr. 149.

Plaintiff later went to LSU-HSC and complained that the surgery and therapy had not relieved his pain and numbness in his hand and wrist. Tr. 192. A physical examination found a full range of motion of both arms and hands and no muscle atrophy or wasting. Occupational therapy for pinch and grip was recommended, and it was also recommended that Plaintiff receive training in a field that does not require repetitive motion. Tr. 190.

Dr. David Waddell treated Plaintiff for complaints of left knee pain. Plaintiff had reconstruction in the left knee in about 1995 and no later trauma, but he reported in a 2001 visit that his knee pain had increased in the past year. Plaintiff was full weight bearing, and physical examination was normal, including a full range of motion, except that Plaintiff complained he was tender around the left knee. Dr. Waddell diagnosed osteoarthritis of the left knee and prescribed Vioxx, Ultram, and an injection of Celestone (which Plaintiff refused). An examination in July 2001 was essentially the same, but Plaintiff did receive the injection of Celestone at that visit. Tr. 313. An MRI in September 2001 showed mild, degenerative joint disease and fat pad scarring of the left knee. Tr. 311. Dr. Waddell prescribed Lortab and recommended sympathetic nerve block. Tr. 310. Dr. Waddell saw Plaintiff on later occasions, but there were no significant changes to what Dr. Waddell called osteoarthritis, grade one. Tr. 304-09.

Dr. Donna Holder, a pain management specialist, administered an intravenous regional sympathetic block in April 2003. Plaintiff did not note any pain relief after the block. Plaintiff stated in a later visit that his medications did offer relief, but he was unsure if the Neurontin was working. Plaintiff called the doctor's office on one occasion and wanted to talk about applying, for the third time, for SSI. He later reported that Lortab was not working as well for him, and he had sharp pains in his fingers and going up his arm. But Plaintiff reported on a later visit that the Neurontin and Loritab were helping with his pain. Percocet was also prescribed, and Plaintiff said it helped him be more active. Plaintiff reported at one visit that all his past work had been manual labor and that he had never done clerical work. He said his reading and spelling skills were poor, and the physician talked with Plaintiff about taking reading classes and getting a GED. Tr. 289-303.

Dr. Edwin Simonton, Jr., an orthopedic physician, conducted a consultative evaluation in June 2003. Plaintiff was then taking Percocet, Celexa, Wellbutrin, Ambien, Neurontin and Hydrocodone. Plaintiff was wearing a knee brace and wrist splints. He had full range of motion in the right shoulder, elbow, wrist and fingers. Flexion of the left wrist was limited, but range of motion in the fingers and left elbow were not restricted. Plaintiff had no sensory or reflex deficit, but he had some tenderness around the right wrist. Grip strength tested at 15 pounds in both hands, but Dr. Simonton noted that a test about one year earlier using the same testing device showed grip strength between 29 and 57 pounds. Range of motion in the left knee was to 120 degrees, and the right knee went to 150 degrees. Plaintiff's stance

was normal, but his gait was slightly antalgic (shortened to alleviate pain when bearing weight on one side) on the left, but Plaintiff did not require an assistive device.

Dr. Simonton stated that Plaintiff did "present indications of symptom magnification" and that, from a physical standpoint, Plaintiff should be able to return to some of his prior occupations when released from the pain clinic.  Dr. Simonton observed that Plaintiff had been prescribed "extensive pain medication" by the pain clinic that "likely would interfere with ability to function at work."  Tr. 225-27

Plaintiff submitted to the Appeals Council a letter from Dr. Randall Brewer, who had reviewed Plaintiff's records and conducted a consultation in January 2006 (approximately 10 months after the ALJ issued his decision).  To the extent the letter relates to Plaintiff's condition through the date of the ALJ's decision, the letter does constitute part of the record that the court must review in determining whether there is substantial evidence to support the decision.  Higginbotham v. Barnhart, 405 F.3d 332 (5th Cir. 2005).  Plaintiff reported ongoing pain in his arms, neck, back and left leg. He especially complained of numbness and burning in his wrists and hands.  Dr. Brewer stated that it was his impression that Plaintiff had a "chronic pain syndrome" and that Plaintiff's complaints about his upper extremities caused him to consider "complex regional pain syndrome" as the etiology of those symptoms. He suggested that Plaintiff be evaluated for in-patient rehabilitation at the Mayo Clinic.  Tr. 330-32.

Plaintiff urges that the ALJ erred when he did not consider at Step 2 whether pain was a severe impairment. Plaintiff concedes that the ALJ did otherwise discuss Plaintiff's complaints of pain at length, but Plaintiff complains that the ALJ did not follow the correct sequence in evaluating the complaints of pain.

The ALJ did not find that pain, alone, was a severe impairment at Step 2, but he did recognize at Step 2 the several physical problems (carpal tunnel syndrome, osteoarthritis, etc.) that caused the pain at issue. Tr. 22. Later, when assessing Plaintiff's RFC, the ALJ considered all symptoms of those severe impairments, including pain, and the extent to which those symptoms could affect the RFC. Tr. 24.

The ALJ found that Plaintiff's statements about his impairments and their impact on his ability to work were only partially credible. The ALJ noted findings of symptom magnification by Dr. Simonton as well as the observance of Dr. Paul Ware, a psychiatrist, that Plaintiff appeared to need to stay in a sick role and that Dr. Ware was at a loss to understand the cause of some of the pain claimed by Plaintiff. Dr. Ware also questioned Plaintiff's motivation for recovery from his claimed disabled role. When Plaintiff filed his claim, he reported a twelfth-grade education, and he told Dr. Ware that he had attended a university for a year and a half. Plaintiff later stated during the claims process that he could not read or write very well and did not have a high school diploma. The ALJ noted the inconsistencies at the hearing, and Plaintiff admitted that he had lied about the extent of his education when he filed his claim. Tr. 337-38. But, the ALJ noted in his decision, one of

Plaintiff's past jobs required him to read blueprints and complete reports, which was inconsistent with the claim of marginal reading and writing skills. Based on those inconsistencies and suggestions of symptom magnification and questionable motivation to recover, the ALJ concluded that Plaintiff's allegations about the extent of his pain and other limitations were not fully credible. Tr. 25. The ALJ also noted that Plaintiff had testified that he could sit no more than 30 minutes because of a hemorrhoid problem that he had suffered with for over 15 years (Tr. 347), but the medical evidence had no indication of such a problem. Tr. 25.

The ALJ did not fully discount the claim of pain. The RFC he assessed was quite limited and precluded overhead work with the upper extremities or constant, repetitive motions of the hands and wrists. The ALJ also said that because of Plaintiff's "complaints of knee pain" he must be able to sit or stand at his option and receive normal breaks. Tr. 25. The ALJ added that Plaintiff's "complaints of pain" and other issues caused some nonexertional limitations that would limit Plaintiff's ability to maintain attention, concentrate, and deal with detailed instructions. Tr. 27.

It is within an ALJ's discretion to determine the disabling nature of a claimant's pain, and his determination is entitled to considerable deference. Hillman v. Barnhart, 2006 WL 690879 (5th Cir. 2006). Here, the ALJ evaluated Plaintiff's testimony and subjective complaints in light of all the objective medical evidence, which was reviewed at length, as

well as inconsistencies in the record, and he made a reasonable assessment of the extent to which Plaintiff's pain affects his ability to work.

Plaintiff urges that Social Security Ruling 96-3p required the ALJ to assess pain at Step 2 and make a specific finding as to whether it was a severe impairment. As noted, the ALJ did find that the physical problems complained of by Plaintiff (the sources of the pain) were severe impairments, and he fully assessed the extent of the pain. His well-reasoned decision is supported by substantial evidence in the record, and a remand would only serve an interest in procedural perfection, which is not required in agency proceedings. See Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir.1988) ( "Procedural perfection in administrative proceedings is not required.") and Morris v. Bowen, 864 F.2d 333, 335-36 (5th Cir.1988) (applying harmless error standard in social security case). See also Palomo v. Barnhart, 154 Fed. Appx. 426, n. 13 (5th Cir. 2005). This issue does not require judicial relief.

**Issue 2: Knee Complaints**

Plaintiff argues that the ALJ did not consider the vocational impact of his knee injury and related pain. The ALJ found that osteoarthritis was one of Plaintiff's severe impairments. He observed that the objective evidence revealed only a mild degree of osteoarthritis in Plaintiff's knee. Plaintiff had experienced the knee problem for years, with no evidence of significant worsening in recent years, and Plaintiff had worked during the years he had the knee pain. Tr. 25.

The ALJ discounted, but did not dismiss, the complaints of knee pain. His RFC included a requirement that, because of knee pain, Plaintiff must be able to sit or stand at his option and receive normal breaks. Tr. 26. Thus, the ALJ did not ignore or wholly dismiss complaints of knee pain as suggested by Plaintiff, and the ALJ's findings in this regard are supported by substantial evidence.

**Issue 3: Splints and Side Effects**

Plaintiff notes that he takes a number of medications, including Percocet and Ambien. The side effects of medication may give rise to nonexertional impairments that must be considered. Plaintiff states that Dr. Simonton "opined that his medication interferes with his ability to function at work." Actually, Dr. Simonton merely speculated that because Plaintiff had been prescribed extensive medication it "likely would interfere with ability to function at work." Tr. 227. Plaintiff points to no evidence of side effects that would limit his ability to work beyond the RFC found by the ALJ, so the reference to Dr. Simonton's one-time speculation does not support a finding of any error by the ALJ.

Plaintiff also observes that he wears wrist splints and that their impact was not considered in formulating the RFC. The ALJ did not specifically mention the wrist splints in his RFC assessment, but he did mention in other portions of his opinion that Plaintiff had used wrist splints. More important, the ALJ constantly acknowledged Plaintiff's severe impairments of his upper extremities and acknowledged significant pain associated with those impairments. His RFC included substantial limitations on lifting and carrying,

repetitive motions of the hands/wrists, and an inability to perform overhead work with the upper extremities. Plaintiff has not offered any explanation as to how his wrist splints would further limit his RFC, and he has not pointed to any statement by a physician that Plaintiff must wear the splints at all times. These issues do not present grounds for relief.

Accordingly;

**IT IS RECOMMENDED** that the Commissioner's decision to deny benefits be **affirmed** and that Plaintiff's complaint be **dismissed with prejudice**.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this the 13th day of July, 2007.

                                                  MARK L. HORNSBY
                                                  UNITED STATES MAGISTRATE JUDGE